AC 91 (Rev. 5/85) Criminal Complaint          AUSA R.W. POWELL/DEA S/A BOB SHINN

# United States District Court

__SOUTHERN__ DISTRICT OF __FLORIDA__

UNITED STATES OF AMERICA

v.

FERNANDO PINEDA

**CRIMINAL COMPLAINT**

CASE NUMBER: *00-4267-AS*

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __November 17, 2000__ in Broward County, in the __Southern__ District of __Florida__ defendant did knowingly and intentionally import into the United States from a place outside thereof and possess with intent to distribute a quantity of heroin, a Schedule I controlled substance, that is, a mixture and substance containing approximately 1.9 pounds of heroin,

in violation of Title __21__ United States Code, Section(s) __952 and 841(a)(1)__

I further state that I am a(n) __Special Agent of the DEA__ and that this complaint is based on the following facts:

PLEASE SEE ATTACHED AFFIDAVIT

Continued on the attached and made a part hereof: [X] Yes [ ] No

Signature of Complainant
Special Agent Robert Shinn
Drug Enforcement Administration

Sworn to before me, and subscribed in my presence,

November 19, 2000                          at  Fort Lauderdale, Florida
Date                                           City and State

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer          Signature of Judicial Officer



AFFIDAVIT

Before me, the undersigned personally appeared Robert Shinn, who being duly sworn, deposes and states:

1. I am employed as a Special Agent with the Drug Enforcement Administration (DEA) in Fort Lauderdale, Florida. I have been a Special Agent for approximately four (4) years and currently assigned to investigate violations of federal narcotics laws. Prior to my employment with the DEA, I was a police officer in St. Louis County Missouri for eight (8) years. During my last two (2) years in St. Louis County I was assigned to a narcotics unit where I conducted narcotic investigations.

2. During my career as a DEA Agent and as a police officer, I have participated in numerous investigations involving violations of narcotics laws, including several investigations involving heroin. As a result of my experience, I am familiar with the manner and methods used by narcotics traffickers to distribute narcotics.

3. This affidavit is submitted in support of a complaint to show probable cause charging FERNANDO PINEDA with violations of federal law to wit; possession with intent to distribute heroin, in violation of Title 21, United States Code, Section 841 (a) (1), and importation of heroin into the United States, in violation of Title 21, United States Code, Section 952(a). These are not all of

the facts known to the affiant but only those necessary for a determination of probable cause.

4. On November 17, 2000, members of the Broward County Domestic Interdiction Unit (DIU) were working in the terminal area of the Fort Lauderdale/Hollywood International Airport. At approximately 9:20 a.m., Border Patrol Agent John Solek and I observed a male subject later identified as FERNANDO PINEDA standing in the Spirit Airlines ticket line, wearing a full length green wool trench coat, even though the temperature outside the airport terminal was approximately 80 degrees. While standing in line, PINEDA was observed continually looking at and adjusting the waist band of his pants, and appeared to be very nervous. PINEDA was also wearing a white shirt, which was worn outside of his pants, concealing his waistline. In my experience conducting narcotics investigations at the Fort Lauderdale International Airport, this is common among body carriers of controlled substances who are trying to conceal bulky packaging of controlled substances.

5. An announcement was made by Spirit Airlines that holders of electronic tickets should go directly to the gate to obtain their respective boarding passes. PINEDA exited the line and proceeded to the boarding gate. Agent Solek and I approached PINEDA and identified ourselves as law enforcement officers and displayed our respective badges and photo identification. PINEDA

agreed to an interview and stated that he was traveling to New Jersey for a U.S. Postal Service interview. Agent Solek asked PINEDA if he had any narcotics on his person or inside his carry on bag, which PINEDA replied no. Agent Solek requested to search PINEDA and his carry on bag, which PINEDA agreed. Agent Solek conducted a pat down search of PINEDA and felt numerous hard pellets above the groin area of PINEDA. I asked PINEDA "what do you have", at which time PINEDA replied that he had heroin.

6. In order to continue the search in a more private area, PINEDA was placed in investigative detention and escorted to the airport DIU office, where he consented to removal of his pants. Upon lifting up PINEDA's shirt, I observed the top portion of (2) white cotton socks partially hanging over the waistline of PINEDA's pants. Upon further examination of the socks, I observed numerous hard pellets wrapped in clear plastic. These pellets weighed approximately 1.9 pounds gross weight. Detective Jose Interian field tested one of the pellets, which tested positive for heroin, a Schedule I controlled substance, at which time PINEDA was placed under arrest.

7. Agent Solek advised PINEDA of his Constitutional Rights per Miranda and received acknowledgment from PINEDA that he understood his rights and agreed to waive same. PINEDA thereafter reported that he swallowed approximately 150 heroin pellets on November 14, 2000, which he obtained from Jorge LNU in Medellin,

Colombia. The following day, PINEDA flew to Miami, Florida on Aces Airlines, at which time he obtained a room at a Travel Lodge close the Miami International Airport. PINEDA passed the majority of the pellets at that location, then proceeded to stay with his father in Miami, where he passed several more.

8.  On November 17, 2000, PINEDA drove to the Fort Lauderdale/Hollywood International Airport, and attempted to travel on Spirit Airlines flight 456 enroute to Newark International Airport, Newark, New Jersey; however he was apprehended by law enforcement. PINEDA further stated that he was instructed by Jorge LNU to meet an unknown male at a location in Manhattan, New York, the following day and give the unknown male the heroin for distribution. PINEDA advised that he would be paid $10,000.00 in U.S. currency by the New York contact for the transportation of the heroin from Colombia to New York City.

9.  PINEDA further advised that he believed that he still had 1 or 2 heroin pellets inside his body, at which time he was transported to the Broward General Hospital and examined by a medical doctor. PINEDA passed an additional (4) pellets at the hospital and was re-examined by the doctor, who authorized medical clearance so he could be taken into custody and transported to the Fort Lauderdale City Jail.

10. WHEREFORE, your affiant submits that there is probable cause for the arrest of the defendant Fernando PINEDA for violation of Title 21, United States Code, Sections 952(a) and 841(a)(1).

FURTHER YOUR AFFIANT SAITH NOT.

Robert Shinn, Special Agent
Drug Enforcement Administration

Subscribed and sworn to
before me this 18th day of November, 2000.

Lurana Snow
United States Magistrate Judge

5