UNITED STATES DISTRICT COURT    **NIGHT BOX**
SOUTHERN DISTRICT OF FLORIDA       **FILED**

CASE NO. 00-6330-CR-HURLEY/VITUNAC    APR 0 2 2001

UNITED STATES OF AMERICA,    :         CLERK, USDC / SDFL / WPB

       Plaintiff,        :

v.        :

FERNANDO PINEDA,        :

       Defendant.        :

_____ :

### DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE'S
### REPORT & RECOMMENDATION

COMES NOW the defendant Fernando Pineda, by and through his undersigned attorney, and pursuant to 28 U.S.C. section 636 and Rule 4 of the Magistrate Judge Rules of the United States District Court for the Southern District of Florida, and files his Objections To Magistrate Judge's Report & Recommendation which report recommended denial of the defendant's Motion To Suppress Evidence and Statements, and states as follows:

1. By order dated March 5, 2001, United States Magistrate Judge Ann E. Vitunac recommended denial of the defendant Pineda's Motion To Suppress Evidence and Statements.

2. The defendant specifically objects to the Magistrate Judge's recommendation that this Court deny the defendant's Motion To Suppress Evidence and Statements and requests de novo

1



review by the district judge. The defendant has filed the transcript of the suppression hearing under separate pleading. Transcript of February 27, 2001, Evidentiary Hearing (hereinafter "Transcript").

3.  The defendant specifically objects to the Magistrate Judge's findings of fact with regard to the events of November 17, 2001. Although it is not clear that the Magistrate Judge makes such a finding (it was unnecessary to her ruling in light of her finding that no seizure occurred), in an abundance of caution, the defendant objects to any finding that Pineda pulled his coat closed repeatedly while standing in line, or that he repeatedly looked all around the airport. The defendant denied doing that during his testimony. The agents' testimony was in conflict on several important facts, including where they were located while observing the defendant in line, and therefore should not be accepted on these points.

4.  The defendant also specifically objects to the Magistrate Judge's conclusion that the defendant "could have left if he wanted to" and that at no time were the agents "blocking his path" during the stop. The defendant testified clearly and credibly that the agents blocked his path to the plane when they initially stopped him and that he did not feel he could leave once stopped by the officers. *See* Transcript at 86-87, 92. Finally, the defendant objects to any factual finding that the defendant actually gave consent to a search of his person.

5.  The Magistrate Judge's factual recitation omits critical facts. The following important facts are not recited in the Magistrate Judge's findings:

A.  At the time the defendant was "tapped on the shoulder," he was walking towards the departure gate. Transcript at 88. Accordingly, he was physically stopped by the agents. Transcript at 34, 63. Additionally, after being stopped, he was moved by the police to a different location, a few feet from the stop. Transcript at 27.

  B. Beyond simply "briefly show[ing] Pineda their credentials," the agents from the outset advised the defendant as part of their "show of authority" that they were interdiction agents seeking to intercept contraband, including drugs. Transcript at 37, 50, 65. In fact, the agents went so far as to apprise the defendant of South Florida's large drug problem. Transcript at 65.

  C. The Magistrate Judge did not reach the issue regarding the level of the officers' suspicion. Nonetheless, although both agents claimed the primary basis for the defendant being suspicious was the coat he was wearing, it is important to note that the defendant was stopped in an airport and that the temperature in Newark, New Jersey–the defendant's destination--was a high of only 55 and a low of 41. Transcript at 71. For that reason, the temperature in Miami, Florida is of little relevance. Moreover, both agents admitted on cross-examination that it was not unusual for people to be wearing coats in the Fort Lauderdale Airport while waiting to travel to the Northeast. Transcript at 31, 58. Indeed, the defense introduced photographs showing numerous people wearing jackets while waiting in the Spirit ticket line. Transcript at 73. Finally, although agent Shinn claimed during his testimony not to have photographs of the jacket in court, or even the jacket itself, such photographs subsequently were provided and introduced by the defense. Transcript at 75. These photographs reflect that there is nothing out of the ordinary about the overcoat worn by the defendant. *See* Defendant's Exhibits 11, 13, 14, 15, 16.

  6. The defendant specifically objects to the Magistrate Judge's conclusion that the defendant was at no time seized for Fourth Amendment purposes after being stopped by agents Solek and Shinn while walking toward the departure gate. At the time Solek touched the defendant and stopped him from proceeding towards the departure gate, his freedom of movement was restrained. Further, he was then the subject of a show of authority by both agents who identified themselves as

federal agents (one as a federal drug agent) and advised he was stopped because they were looking for drugs and contraband in the airport. No reasonable person in the defendant's circumstances would have believed he was free to ignore the police questioning and go about his business. Accordingly, the defendant was seized for constitutional purposes at that point, *see Florida v. Bostick*, 501 U.S. 429, 439 (1991); *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968), and the Magistrate Judge's conclusion to the contrary was erroneous.

7. Because the Magistrate Judge erroneously concluded that there was no seizure, the Magistrate Judge did not assess whether the facts and circumstances available to the officers rose to the level of "reasonable suspicion" that is necessary to justify even a minimal intrusion upon a person's right to be free from law enforcement seizure. In fact, the facts and circumstances purportedly relied on by the officers to justify their seizure of the defendant did not rise to the level of a "reasonable and articulable suspicion of criminal activity" that would permit the seizure. The stop and seizure was instead based on nothing more than a speculative hunch. Accordingly, the seizure violated the Fourth Amendment and the Magistrate Judge's contrary conclusion was error. *Cf. Reid v. Georgia*, 448 U.S. 438 (1980) (finding airport seizure violated Fourth Amendment as it was based on an inchoate and unparticularized suspicion or hunch); Report and Recommendation of United States Magistrate Judge Lurana S. Snow, adopted by U.S. District Judge Wilkie Ferguson, in *United States v. Franscisco Perez*, 00-6197-CR-FERGUSON/SNOW (suppressing evidence obtained by same interdiction unit at Fort Lauderdale airport, which stop purported to be based on similar factors advanced by Government here).

8. The defendant specifically objects to the Magistrate Judge's conclusions of law and her determination that the Government met its burden of establishing that Fernando Pineda freely

4

and voluntarily consented to a search of his person. The defendant did not freely and voluntarily consent to the search of his person. As testified to by the defendant, the officers never sought consent to search his person, only his bag. Moreover, to the extent any consent was given, it only was given in acquiescence to the police show of authority. *See Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968). The test is an objective one and asks "whether a reasonable person would have felt free to decline the officers' requests." *Bostick*, 501 U.S. at 439. Importantly, agent Solek testified that when he asked the defendant to consent to a search of his person, the defendant hesitated, his cooperative demeanor changed, and he had hesitation in his voice. Transcript at 40. The agents also testified that at the time they obtained this purportedly free and voluntary consent, the defendant's lip was quivering and he appeared "frightened." Transcript at 42, 67.

Finally, the officers never advised the defendant that he had a right to refuse their request to consent to a search. Transcript at 41, 67-68. A recent line of cases from the Eleventh Circuit have held that the failure to advise a person of the right to refuse consent is an important consideration in assessing whether the consent was truly freely and voluntarily given. *See United States v. Washington*, 151 F.3d 1354 (11th Cir. 1998) (finding bus search violated Fourth Amendment and noting that a reasonable person would not have felt free to disregard the request without some positive indication that consent could have been refused); *United States v. Guapi*, 144 F.3d 1393 (11th Cir. 1998) (finding bus search violated Fourth Amendment in part because officers did not advise passenger he was not required to consent to search); *United States v. Drayton*, 231 F.3d 787 (11th Cir. 2000) (relying on *Washington* and finding that consent to search was not a product of free and voluntary consent). As the Eleventh Circuit has stated that "close scrutiny for the presence of coercion in airport stops is required because the very nature of airport stops renders them

intimidating," *United States v. Espinosa-Guerra*, 805 F.2d 1502, 1507 (11th Cir. 1986), these bus search cases are equally applicable to the airport search context and should control the outcome here. In sum, the Government did not establish that Pineda freely and voluntarily consented to the search of his person and the Magistrate Judge's conclusion that he did was erroneous.

9. The Magistrate Judge also erred by implying that the Supreme Court's decision in *United States v. Mendenhall*, 446 U.S. 544 (1980), controls and supports the Magistrate Judge's conclusion that no seizure occurred here. The defendant specifically objects to the Magistrate Judge's reliance on *Mendenhall*. Importantly, that portion of *Mendenhall* quoted by the Magistrate Judge which concludes that no seizure occurred was section II-A of Justice Stewart's opinion and was joined only by Justice Rehnquist. Significantly, the seven other members of the Court concluded that a seizure occurred, three of them believing that the seizure was supported by reasonable suspicion, and four believing it was not. *See Mendenhall*, 446 U.S. 544 (Powell, J., concurring and White, J., dissenting). As Justice White aptly notes, the result in *Mendenhall* "is particularly curious because a majority of the Members of the Court refuse to reject the conclusion that Ms. Mendenhall was 'seized,' while a separate majority decline to hold that there were reasonable grounds to justify a seizure." *Mendenhall*, 446 U.S. at 566 (White, J., dissenting). In any event, one thing is clear: only two members of the Court joined that part of *Mendenhall* relied on by the Magistrate Judge. Contrary to the Magistrate Judge, the defendant contends that *Reid v. Georgia*, 448 U.S. 438 (1980), controls the outcome here and requires the Court to grant the defendant's motion to suppress.

10. The defendant specifically objects to the finding that the defendant was not in custody for *Miranda* purposes at the time he was questioned about the bulge in his pants. The defendant was

at that time subjected to custodial interrogation that was not preceded by *Miranda* warnings and therefore his statement should be suppressed.

WHEREFORE the defendant prays that this Court sustain his objections, reject the magistrate judge's recommendation that the Court deny the motion to suppress, and instead grant the defendant's motion to suppress physical evidence and statements.

Respectfully submitted,

KATHLEEN M. WILLIAMS
FEDERAL PUBLIC DEFENDER

By: /s/ Martin J. Bidwill
Martin J. Bidwill
Assistant Federal Public Defender
Attorney for Defendant
Florida Bar No. 868795
400 Australian Avenue, #300
West Palm Beach, FL 33401
(561) 833-6288/833-0368 (fax)

CERTIFICATE OF SERVICE

I certify that a true and correct copy of the aforementioned motion was mailed on this 3rd day of April, 2001, to Roger Powell, Assistant United States Attorney, 500 East Broward Boulevard, #700, Fort Lauderdale, FL 33301.

/s/ Martin J. Bidwill
Martin J. Bidwill